(No. 15378.—Judgment affirmed.)

THE PEOPLE *ex rel.* E. K. Metcalf, Appellant, *vs.* R. L. BOWMAN *et al.* Appellees.

*Opinion filed April 14, 1924.*

SCHOOLS—*what is essential to a valid school district.* No school district can be organized so that every pupil in it will be as conveniently located with reference to the school house as every other pupil, but what is required in the organization of a school district is that all the children within its boundaries shall be offered an opportunity to enjoy the benefits of the school with a reasonable degree of comfort.

APPEAL from the Circuit Court of Greene county; the Hon. E. S. SMITH, Judge, presiding.

T. I. McKNIGHT, JARRETT & NEIGER, and L. E. STONE, for appellant.

WAYNE WRIGHT, and STEVENS & HERNDON, for appellees.

Per CURIAM: This appeal is from a judgment of the circuit court of Greene county setting aside an order granting leave to appellant to file an information in the nature of *quo warranto* against appellees, the board of education of Community High School District No. 191 in Greene and Macoupin counties, and dismissing the information.

A plea was first filed by appellees and demurred to by appellant, but afterwards by agreement the plea and demurrer were withdrawn, and by agreement it was stipulated that the only questions involved for decision were (1) whether the territory composing the district was compact and contiguous and (2) whether the district embraced parts of other communities, and it was agreed that the hearing should be on affidavits of the respective parties. It was so

heard and the information was dismissed at relator's cost, from which judgment he has prosecuted this appeal.

The district contains the equivalent of seventy-one sections of land in Greene and Macoupin counties. Its greatest distance north and south is nine and one-half miles and from east to west nine miles. The school house is in Greenfield, a village in said district having a population of about 1200. The village is about three and one-half miles from the western boundary and about the same distance from the south boundary. It is six miles from the north boundary and approximately five miles from the east boundary. The highways in the district are dirt roads. Some of them are State aid and some of them not State aid roads, but some of those which are not now State aid roads are being made so. Three small streams or creeks run through certain parts of the district and are spanned by steel or concrete bridges.

The affidavits of the respective parties are too numerous and lengthy to set out in substance. Those on the part of appellant are to the effect that at times during the school year the roads are impassable at certain places for periods of from a few to several days; that on account of the condition of the roads in bad weather and the distance some of the pupils must travel to go to the school they cannot regularly attend but are deprived of the benefits of the school for periods of time unless they board in Greenfield, which some of them cannot afford to do. Substantially all of appellant's affidavits were made by residents of the district living outside of Greenfield, some of whom were parents of children who attended the high school, and such affiants gave their own personal experience of the difficulties of keeping their children in school regularly. The greatest distance to be traveled by anyone to get to the school was eight miles, but there were only a few who lived anything like that far from the school house. ·

Appellees presented the affidavits of a very large number of persons, among them the county superintendent of

highways, township highway commissioners, mail carriers and ex-mail carriers, two doctors living in Greenfield, and a very large number of affidavits of other persons living in Greenfield and some outside the city limits, all of whom testified they were familiar with the roads, streams and conditions in the district. If their affidavits are to be believed, the roads in the district are in good condition throughout the year. They are well graded, regularly dragged, efficiently drained and kept in good repair. A number of the appellees' witnesses stated the roads were passable by automobiles 85 to 90 per cent of the year and by horse-drawn vehicles the entire year. With the exception of an unprecedented flood in the spring of 1922, which did considerable damage and made the roads impassable for a while, they have been in good condition all the time. Since the spring of 1922 they have been repaired and the grade raised where needed. The streams are crossed by steel and concrete bridges, and if overflows ever interfere with travel it is but for a few hours at a time. Affidavits of several pupils who lived outside the limits of district 191, east, southeast, south, west and northwest, some of them from points more remote from the school than any who lived in the district, stating they had attended high school in Greenfield from one to three years and that their attendance had not been at any time prevented by the condition of the roads and that they attended regularly, were corroborated by a teacher.

It is evident no school district can be organized so that every pupil in it will be as conveniently located with reference to the school house as every other pupil. What is required in the organization of school districts is that all the children within its boundaries shall be offered an opportunity to enjoy, with a reasonable degree of comfort, the benefits of the school. We have discussed this question so often that we deem it unnecessary to do more here than refer to some of the cases. Many of them will be found cited in *People* v. *Farran,* 311 Ill. 87. (See, also, *People* v.

*Moyer,* 298 Ill. 143; *People* v. *Price,* 310 id. 66.) We can not say the court erred in dismissing the information.

To our minds there is very little merit in the contention that the district is illegal because it embraces parts of more than one community.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*